**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| TECHDEMOCRACY, LLC,<br>499 Thornall Street, 3d Floor<br>Edison, NJ 08837<br><br>　　　Plaintiff,<br><br>v.<br><br>UNATEK, INC.,<br>10411 Motor City Drive, Suite 750<br>Bethesda, MD 20817<br><u>Serve On</u>:<br>Theresa Iheagwara, Resident Agent<br>10119 Autumn Ridge Court<br>Bowie, MD 20721<br><br>　　　Defendant. | Civil Action No.: _____ |

## COMPLAINT

Plaintiff, TechDemocracy, LLC ("TechDemocracy" or "Plaintiff"), by and through its undersigned counsel, hereby sues Defendant, Unatek, Inc. ("Unatek" or "Defendant"), and states:

### Parties and Jurisdiction

1. TechDemocracy is a Delaware limited liability company with its principal place of business in Edison, New Jersey. TechDemocracy is a global IT consulting company with specialized expertise in the areas of Identity and Access Management, Data Security, E-business Suite, Service Oriented Architecture, Business Process Management, and Business Intelligence.

2. Unatek is a Maryland corporation with its principal place of business in Bethesda, Maryland. Unatek is a provider of information technology services and frequently contracts with governmental agencies.

3. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over the Defendant because the Defendant resides in, and is organized under the laws of, the State of Maryland.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the Defendant resides in this judicial district and a substantial part of the events and omissions giving rise to the Plaintiff's claim occurred in this judicial district.

## Facts Common to All Counts

6. The allegations contained in Paragraphs 1-5, *supra*, are hereby adopted and incorporated by reference as if fully set forth herein.

7. In or around March 2014, TechDemocracy engaged in discussions with the Washington Suburban Sanitary Commission ("the WSSC") regarding the WSSC's plans to implement Oracle's Identity Governance solution to simplify and streamline its IT operations and identity life cycle management processes.

8. On March 5, 2014, in connection with the foregoing discussions, TechDemocracy submitted to the WSSC an initial proposal and Statement of Work in which TechDemocracy outlined its plan to architect, design and implement and Oracle Identity Governance solution to meet WSSC's goals and objectives.

9. Although extremely impressed with TechDemocracy's proposal and its credentials as a premier IT consultant with vast expertise in identity and access management solutions, the WSSC observed that TechDemocracy was not on the WSSC's existing list of approved outside vendors. Thus, the WSSC suggested to TechDemocracy that it consider

submitting a formal proposal through one of the WSSC's approved IT vendors in order to facilitate its engagement for the Oracle Identity Governance project,

10. In or about late June 2014, TechDemocracy contacted Unatek, advised Unatek of the WSSC's Oracle Identity Governance project, and inquired whether Unatek would be willing to serve as TechDemocracy contracting vehicle for the project.

11. Unatek expressed interest in serving as TechDemocracy's contracting vehicle for the WSSC's Oracle Identity Governance project and subsequently engaged in further discussions with TechDemocracy regarding the terms and conditions of the working relationship between the companies.

12. Ultimately, TechDemocracy and Unatek reached an agreement whereby the parties, through Unatek, would obtain a contract with WSSC for the implementation of the Oracle Identity Governance solution and TechDemocracy would supply the three IT consultants who were needed to work on-site at the WSSC to implement the solution. The parties agreed that Unatek would "mark-up" TechDemocracy's billing rates for each consultant by $10 per hour and then bill the WSSC at the marked-up rate. The parties further agreed that when Unatek received payments from the WSSC, Unatek would forward said payments to TechDemocracy less the $10/hour mark-up, which Unatek would retain as its compensation for serving as the contracting vehicle for the project.

13. TechDemocracy and Unatek did not memorialize their agreement in a formal written document. Nevertheless, the parties proceeded thereafter to act in accordance with the agreement they had reached.

14. On or about July 18, 2014, Unatek submitted to the WSSC the resumes of several TechDemocracy consultants who were identified as potential resources for the project.

Consistent with the parties' agreement, the billing rates quoted by Unatek to the WSSC for the TechDemocracy consultants were $10/per hour greater than the billing rates quoted by TechDemocracy to Unatek for said consultants.

15. For two of the proposed consultants, Harpreet Singh and Sunny Ajmera, TechDemocracy charged $155/hour, which Unatek marked-up to $165/hour in its submission to the WSSC. TechDemocracy charged $145/hour for the third proposed consultant, Veerendra Yedlapalli, which Unatek marked-up to $155/hour in its submission to the WSSC.

16. Following the completion of background checks on the TechDemocracy consultants, the WSSC issued a formal Purchase Order on October 7, 2014, approving the engagement of the three aforementioned TechDemocracy consultants to work 1,000 hours each in connection with the implementation of the Oracle Identity Governance solution. The total authorized expenditure by the WSSC for the engagement of the three TechDemocracy consultants for the Oracle Identity Governance project was $485,000.00. A true and accurate copy of the WSSC's Purchase Order is attached hereto as *Exhibit 1*.

17. Following the issuance of the Purchase Order, TechDemocracy's contractors then began to work on site at the WSSC to implement the Oracle Identity Governance solution.

18. Unatek thereafter billed the WSSC at the rates reflected in the Purchase Order and initially remitted to TechDemocracy the payments it received from the WSSC less the $10/hour mark-up, which Unatek retained as its compensation.

19. In or about November, 2014, Unatek prepared a written "Subcontractor Agreement" which reflected the agreed-upon compensation to be paid to TechDemocracy ($155/$145 per hour). However, Unatek inserted into the document certain non-solicitation and non-compete clauses that the parties had never previously discussed, let alone agreed on.

TechDemocracy found the non-solicitation and non-compete clauses to be objectionable and refused to execute the "Subcontractor Agreement." As a result, the parties continued to function in accordance with their existing arrangement.

20. In or about January 2015, Unatek unilaterally reduced the compensation it remitted to TechDemocracy for its consultants from $155/$145 per hour to $93.63/$91.93 per hour and made the change retroactive to October 2014. TechDemocracy vigorously objected to Unatek's action and advised Unatek that it would not agree to reduce its agreed-upon rates of compensation.

21. In or about February 2015, Unatek unilaterally adjusted the compensation it remitted to TechDemocracy for the work performed by TechDemocracy's consultants to $125/$115 per hour. TechDemocracy again vigorously objected to Unatek's action and advised Unatek that it was bound to compensate TechDemocracy's consultants at rates of $155/$145 per hour in accordance with the parties' agreement.

22. In or about April 2015, Unatek advised TechDemocracy that it intended to reduce TechDemocracy's compensation back to the $93.63/$91.93 per hour rate for the remainder of the project. TechDemocracy again voiced its objection and advised Unatek that it was bound to compensate TechDemocracy's consultants at the agreed-upon rates of $155/$145 per hour.

23. Despite Unatek's failure to compensate TechDemocracy at the agreed-upon rates, TechDemocracy continued to honor its obligations under the parties' agreement and continued to supply IT consultants to complete the WSSC's implementation of the Oracle Identity Governance solution.

24. By letter dated April 24, 2015, a true and accurate copy of which is attached hereto as *Exhibit 2*, TechDemocracy afforded Unatek a final opportunity to cure its breach of the parties' agreement. Unatek, however, ignored TechDemocracy's letter.

25. To date, Unatek has withheld in excess of $145,000.00 of compensation owed to TechDemocracy under the parties' agreement and has failed to remit same to TechDemocracy despite demand therefor.

26. Additional invoices still must be generated and processed with respect to the Oracle Identity Governance project. As such, TechDemocracy's damages will increase to the extent that Unatek continues to dishonor the parties' agreement.

27. Implementation of the Oracle Identity Governance solution was completed by TechDemocracy on May 29, 2015. WSSC has advised that it is extremely satisfied with the work performed by TechDemocracy's consultants in connection with the successful completion of this project.

## Count I
**(Breach of Express Contract)**

28. Plaintiff realleges and incorporates herein the allegations in Paragraphs 1-27.

29. TechDemocracy and Unatek entered into a contract regarding the implementation of the Oracle Identity Governance solution at the WSSC.

30. Unatek breached its contractual obligation to remit compensation to TechDemocracy at the agreed-upon rates of $155/$145 per hour by forwarding compensation to TechDemocracy at rates less than $155/$145 per hour.

31. TechDemocracy has been damaged by Unatek's failure to remit compensation to TechDemocracy at the agreed-upon rates of $155/$145 per hour.

WHEREFORE, TechDemocracy demands judgment against Unatek in an amount to be determined at trial, but not less than Two Hundred Thousand Dollars ($200,000.00), plus prejudgment interest at the prevailing Maryland legal rate and post-judgment interest as provided by 28 U.S.C. § 1961, court costs, and such other and further relief as may be just and proper.

## Count II
### (Breach of Implied-in-Fact Contract)

32. Plaintiff realleges and incorporates herein the allegations in Paragraphs 1-31.

33. TechDemocracy and Unatek entered into an agreement regarding the implementation of the Oracle Identity Governance solution at the WSSC.

34. Pursuant to that agreement, TechDemocracy rendered valuable services to and on behalf of Unatek by supplying IT consultants to implement the Oracle Identity Governance solution at the WSSC in connection with the Purchase Order issued by the WSSC to Unatek.

35. TechDemocracy supplied IT consultants to implement the Oracle Identity Governance solution at the WSSC for the benefit of Unatek with the expectation of being compensated by Unatek for such services at a rate of $155/$145 per hour.

36. Unatek was aware of and accepted the benefit provided by TechDemocracy's supply of IT consultants for the Oracle Identity Governance project, and knew that TechDemocracy expected to be compensated for the services it provided at a rate of $155/$145 per hour.

37. TechDemocracy is entitled to recover from Unatek the value of the services it provided to Unatek at the reasonable rate of $155/$145 per hour.

WHEREFORE, TechDemocracy demands judgment against Unatek in an amount to be determined at trial, but not less than Two Hundred Thousand Dollars ($200,000.00), plus

prejudgment interest at the prevailing Maryland legal rate and post-judgment interest as provided by 28 U.S.C. § 1961, court costs, and such other and further relief as may be just and proper.

## Count III
### (Unjust Enrichment)

38. Plaintiff realleges and incorporates herein the allegations in Paragraphs 1-37.

39. By supplying IT consultants to implement the Oracle Identity Governance solution at the WSSC in connection with the Purchase Order issued by the WSSC to Unatek, TechDemocracy conferred a valuable benefit upon Unatek.

40. Unatek was aware of and accepted the benefit provided by TechDemocracy's supply of IT consultants for the Oracle Identity Governance project.

41. Unatek's acceptance and retention of the benefit provided by TechDemocracy's supply of IT consultants for the Oracle Identity Governance project without paying to TechDemocracy the value of the benefit obtained would be unfair and inequitable.

WHEREFORE, TechDemocracy demands judgment against Unatek in an amount to be determined at trial, but not less than Two Hundred Thousand Dollars ($200,000.00), plus prejudgment interest at the prevailing Maryland legal rate and post-judgment interest as provided by 28 U.S.C. § 1961, court costs, and such other and further relief as may be just and proper.

Respectfully submitted,

SCHLOSSBERG & MASTRO

Date:   June 5, 2015

By:   /s/ Frank J. Mastro
Frank J. Mastro #24679
18421 Henson Blvd., Suite 201
Hagerstown, MD 21742
(301) 739-8610
*Attorneys for Plaintiff,*
*TechDemocracy, LLC*